UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
PALM BEACH DIVISION

**00-6043**
**CIV-JORDAN**

**MAGISTRATE JUDGE**
**SORRENTINO**

FRITZ MAIGNAN,
　　Petitioner,
vs.                                    CASE No. _____
MICHAEL W. MOORE,              TO BE SUPPLIED BY THE CLERK
　　Respondent.

---

ARGUMENTS OF PETITIONER'S MEMORANDUM OF
LAW IN SUPPORT OF HIS PETITION FOR WRIT OF
HABEAS CORPUS

---

By: *Maignan fritz*
Fritz Maignan #196119
Mail #4017
Desoto Correctional Institution
P.O. Drawer 1072
Arcadia, Florida 34265

In Prose

ARGUMENT

POINT ONE

THE TRIAL COURT COMMITTED FUNDAMENTAL ERROR IN INSTRUCTING THE JURY THAT THE DEFENDANT HAD THE BURDEN OF DISPROVING PREDISPOSITION BEYOND A REASONABLE DOUBT THEREBY VIOLATING PETITIONER'S RIGHT TO A FAIR TRIAL BY JURY.

In Munoz vs State, 629 So. 2d 90, 99 (Fla. 1993), the Florida Supreme Court thoroughly discussed the law of objective and subjective entrapment in Florida in light of section 777.201 Florida Statutes (1987). In Munoz the Court held that in a subjective entrapment case tried to a jury, once the defendant shows some evidence of a lack of predisposition, the burden shifts to the state to prove predisposition beyond a reasonable doubt:

> The first question to be addressed under the subjective test is whether an agent of the government induced the accused to commit the offense charge. On this issue, the accused has the burden of proof and, pursuant to section 777.201, must establish this factor by a preponderance of the evidence. If the first question is answered affirmatively, then a second question arises as to whether the accused was predisposed to commit the offense charged; that is whether the accused was awaiting any propitious

(1)

opportunity or was ready and willing, without persuasion, to commit the offense. On this second question, according to our decision in <u>Herrera</u>, the defendant initially has the burden to establish lack of predisposition. However, as soon as the defendant produces evidence of no predisposition, the burden then shifts to the prosecution to rebut this evidence beyond a reasonable doubt...

In adopting the shifting burden of proof and reasonable doubt standard in <u>Munoz</u>, the Florida Supreme Court relied heavily on the previous year's decision in <u>Jacobson vs United States</u>, 503 U.S. 540, 112 S.Ct. 1535, 118 L.Ed. 2d 174 (1992). <u>Jacobson</u> is the entrapment case involving obscene magazines. The jury rejected the entrapment defense at trial, but the court found it as a matter of law, holding the government had failed to meet its burden of proving predisposition. This burden, the court held, is that the state must prove predisposition beyond a reasonable doubt.

The instruction in this case never informed the jury the state had the burden of proving predisposition beyond a reasonable doubt. In fact, it incorrectly and incompletely told them just the opposite: that the burden was on the defense to show entrapment by a preponderance of the evidence. The trial court instructed the jury: (TR.445);

> On the issue of entrapment, the defendant must prove to you by a preponderance of the evidence that his criminal conduct occurred as a result of entrapment.

This instruction is plainly improper according to <u>Munoz</u> and <u>Jacobson</u>.

(2)

According to Munoz and Jacobson "as soon as the defendant produces evidence of no predisposition, the burden then shifts to the prosecution to rebut this evidence beyond a reasonable doubt." The jury here was not told that critical information, and reversal is required. In Crutchfield vs State, 739 So. 2d 1193 (Fla. 4th DCA 1999); Miller vs State, 723 So. 2d 353 (Fla. 4th DCA 1998) cert. accepted; and Vazquez vs State, 700 So. 2d 5, 10 (Fla. 4th DCA 1997), cause dismissed, the trial court gave the same jury instruction as the one given by the trial court in this instant case. The Fourth District Court of Appeals in Crutchfield, Miller, and Vazquez, held that the trial court erred in instructing jury that defendant must prove by preponderance of evidence that criminal conduct occurred as result of entrapment, and reversed and remanded these cases for a new trial.

Therefore, due to the fact that the trial court in Crutchfield, Miller and Vazquez, gave the same jury instruction as the one given in this instant case, and the same Fourth District Court of Appeal that reviewed Petitioner's appeal reversed and remanded Crutchfield, Miller and Vazquez for a new trial, Petitioner is entitled to the same relief, and this cause must be reversed and remanded for a new trial.

(3)

<u>ARGUMENT</u>

<u>POINT TWO</u>

<u>INEFFECTIVE ASSISTANCE OF APPELLATE COUNSEL.</u>

Appellate counsel was ineffective for withdrawing issue two in Petitioner's initial appellant brief that reversible error occurred where the trial court incorrectly instructed the jury on an element of conspiracy where the record clearly showed that the trial Court misstated the law in charging the jury on conspiracy to traffic in cocaine by substituting the word "<u>attempt</u>" for the "<u>intent</u>" when this changed the entire meaning of the charge and resulted in fundamental error, and thus, deprived Petitioner of due process and equal protection of the law, his right to effective assistance of counsel and his right to appellate review. See: Exhibit (A) attached hereto.

Petitioner and co-defendant, Katan Maignan, were jointly charged and tried by jury with conspiracy to traffic in cocaine by purchase or possession (R.1). The offense consists of two elements. First, the state must establish that there was an agreement between two or more persons to commit an offense, and second, the state must establish the intent to commit the offense. See: <u>Pickover vs State</u>, 580 So.2d 287 (Fla. 4th DC '991).

In this instant case, without objection, the trial Court instructed the jury on conspiracy in pertinent part as follows: (TR. 44a)

> Before you can find the defendants Katan Maignan and/or Fritz Maignan guilty of criminal conspiracy, the state must prove the following two elements beyond a reasonable doubt: one, the "<u>attempt</u>" of Katan Maignan and Fritz Maignan was that the offense of trafficking in cocaine would be com-

(4)

mitted. Two, in order to carry out the "attempt" Katan Maignan and Fritz Maignan agreed, conspired, combined, or confederate with each other or others unknown to the State's Attorney office to cause trafficking in cocaine to be committed, either by them or one of them or by some other person, or one.

The trial Court should have used the word "intent" instead of "attempt". See: Florida Standard Jury Instruction (Criminal) at page 1214. By substituting the word "attempt" for "intent" the trial Court omitted an essential element of the crime and thus, misstated the law in a material respect. See: Section 777.04(3), Florida Statute. Even in the absence of objection, it is fundamental and reversible error to give misleading instruction to a jury. See: Christian vs State, 272 So. 2d 852 (Fla. 4th DCA 1973); Carter vs State, 469 So. 2d 194 (Fla. 2d DCA 1985).

Therefore, due to the fact that the records in this instant case clearly shows that the trial Court orally stated in charging the jury on conspiracy to traffic in cocaine substituted the word "attempt" for "intent" not once but twice, it cannot be deemed that the Court reporter's notes reflecting that that the court used the proper word "intent" and that when the computer transcribed the notes it confused the symbol for "intent" with "attempt" not once but twice should be given more credibility and control over the trial transcripts records that was transcribed in open court, so it cannot be said that Petitioner has been denied access to the Court in violation of due process and equal protection of the law

(5)

and appellate counsel's action constitutes a senseless disregard for Petitioner's right and constitutes a conspiracy by State official to violate Petitioner's civil right.

Therefore, there is no judicial or strategic excuse for appellate counsel's withdrawing issue two in Petitioner's initial appellant brief.

Petitioner asserts that his allegation of ineffective assistance of counsel meets the test established by the United States Supreme Court in <u>Strickland vs Washington</u>, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed. 2d 674 (1984) in that he has shown that counsel performance was deficient, and that the deficient performance prejudice his appeal.

(6)

## ARGUMENT

### POINT THREE

THE TRIAL COURT ERRED IN FAILING TO GRANT A JUDGMENT OF ACQUITTAL WHERE THE STATE DID NOT ESTABLISH THAT PETITIONER COMMITED CONSPIRACY TO TRAFFIC IN COCAINE.

Petitioner and co-defendant, Katan Maignan, were jointly charged with conspiracy to traffic in cocaine by purchase or possession (R.1). To prove conspiracy, the state must establish that 2 or more persons agreed to commit an offense and the defendant had the intent to commit the offense.

In this instant case, it was the state's theory that Petitioner and co-defendant, Katan Maignan, conspired to possess cocaine by stealing it from an undercover DEA agent. However, the state wholly failed to introduced any evidence that there was an agreement between Petitioner and co-defendant, Katan Maignan to steal the cocaine existed between Petitioner and co-defendant, Katan Maignan.

The evidence adduced at trial showed that DEA agent Anderson contacted Petitioner because a confidential informant advised Anderson that Petitioner wanted to purchase a large amount of drugs (TR.39-40). During their first telephone conversation, Anderson proposed selling two kilograms of wet cocaine for $33,000.00 to Petitioner (TR.40-43). The following day, Anderson met Petitioner and co-defendant, Katan Maignan for the first time (TR.43-44). Price as well as a tentative meeting location were discussed (TR.44-46, 53-54). The next morning, Anderson spoke with co-defendant, Katan Maignan by telephone and suggested a new location for the alleged

(7)

transaction (TR.59-68). Later that morning, Anderson and Petitioner discussed who would be present for the alleged transaction (TR.68-74). That afternoon, Anderson, the confidential informant and Petitioner spoke by telephone after which co-defendant, Katan Maignan, and Anderson spoke (TR.75-85). Co-defendant, Katan Maignan, told Anderson that he did not want to go through with the transaction (TR.126-127). The deal was off (TR.86, 159, 167). At some point, Anderson knew that Petitioner was afraid to do the deal (TR.195).

Several hours later, Anderson spoke to co-defendant, Katan Maignan, again (TR.86, 131-132). Co-defendant, Katan Maignan, and Anderson agreed to conduct the transaction alone at Denny's (TR.87). The following day, Anderson saw Petitioner at Denny's (TR.91). According to Anderson, Petitioner stated that he gave the money to co-defendant, Katan Maignan, to do the deal and then left (TR.91-92).

Co-defendant, Katan Maignan, arrived (TR.92-94). Anderson advised co-defendant, Katan Maignan, that he (Anderson) had a firearm (TR.94-95). Despite numerous requests by Anderson, co-defendant, Katan Maignan, refused to show Anderson any money (TR.102, 110). Co-defendant, Katan Maignan, refused to conduct the transaction while Anderson carried the firearm (TR.174-176). Co-defendant, Katan Maignan, and Anderson parted and the transaction never occurred (TR.95, 176). Shortly thereafter, co-defendant, Katan Maignan was arrested. Inside the vehicle he drove, law enforcement recovered an unloaded firearm from the driver's side floorboard. In addition, a bag containing six (6) bundles of currency each of which was wrapped in a $100.00 bill was seized (TR.228). A total of $1750.00 was recovered (TR.232)

After co-defendant, Katan Maignan, arrest, Anderson contacted Petitioner and Petitioner returned to the Denny's lot because Anderson told Petitioner that co-defendant,

(8)

Katan Maignan, had locked himself inside his vehicle and refused to do the deal (TR.-97-98, 212, 251-252). According to the state witnesses, Petitioner fled upon sight of Anderson and was apprehended (TR. 98, 253-254).

From the above quoted portions of the record, it in no way shows that Petitioner had any discussions, made any prearrangements or had any plans with co-defendant, Katan Maignan, to steal the cocaine from Anderson.

(9)

## ARGUMENT

### POINT FOUR

THE TRIAL COURT ERRED IN FAILING TO GRANT A JUDGMENT OF ACQUITTAL ON ENTRAPMENT AT THE CLOSE OF THE EVIDENCE.

By pretrial motion to dismiss and by judgment of acquittal at the close of the evidence, Petitioner presented a corroborated and unrebutted subjective entrapment defense both because the state failed to prove predisposition beyond a reasonable doubt, and because the defense had shown entrapment by a preponderance of the evidence.

In Munoz vs State, 629 So.2d 90 (Fla. 1993), the Florida Supreme Court described the relative burdens of proof on a subjective entrapment defense:

> The first question to be addressed under the subjective test is whether an agent of the government induced the accused to commit the offense charged. On this issue, the accused has the burden of proof and pursuant to section 777.201, must establish this factor by a preponderance of the evidence. If the first question is answered affirmatively, then a second question arises as to whether the accused was predisposed to commit the offense charged; that is whether the accused was awaiting any propitious opportunity or was ready and willing, without persuasion, to commit the offense. On this second question, according to our decision in Herrera, the defendant

(10)

initially has the burden to establish lack of predisposition. However, as soon as the defendant produces evidence of no predisposition, the burden the shifts to prosecution to rebut this evidence beyond a reasonable doubt.

While <u>Munoz</u> holds the case can be submitted to a jury "when factual issues are in dispute or when reasonable persons can draw different conclusions from the facts," trial and appellate courts retain the authority to rule on subjective entrapment as a matter of law:

> ... if the circumstances of a case are not in dispute, if the accused establishes that the government induced the accused to commit the offense charged, and if the state is unable to demonstrate sufficient evidence of predisposition prior to an independent of the government conduct at issue, then the trial judge has the authority to rule on the issue as a matter of law because no factual "question of predisposition" is at issue.

On the initial question, the defense showed refuted evidence of inducement. At the evidentiary hearing and at trial, Petitioner testified that he met Joseph Clark, the confidential informant, while Petitioner was working as a salesman at a New York Footlocker (SR. 8-9, TR. 297-309). Clark went to the store 4 or 5 times, and on several occassions, Clark told Petitioner that he had friends in Florida and that Petitioner could make quick and easy money and that Petitioner would make more money than he made working at Footlocker (SR. 10, TR. 299). At Clark's urging, Petitioner came to Florida (TR. 300). Petitioner, however, did not have the money to do a large

(11)

cocaine transaction (SR. 24-25). Within days of his arrival, Petitioner was contacted by DEA special agent Heath Anderson (SR. 21, TR. 40, 301).

The DEA did not have any information that Petitioner was involved in illegal drug activity prior to Clark's instigation in this case (TR. 128). Petitioner did not have a record of drug related convictions or arrests (TR. 128-129). Moreover, prior to communicating with Petitioner, Anderson did nothing to confirm the information he received from Clark (SR. 57, 62, TR. 186-187). This unrebutted evidence established inducement and lack of predisposition by a preponderance of the evidence.

Petitioner having met his initial burden of proving inducement and lack of predisposition, the state was required to prove predisposition beyond a reasonable doubt. see: *Munoz vs State*, 629 So.2d at 95 (Fla. 1993). That burden was not met in this instant case. To the contrary, the state wholly failed to adduce any evidence of predisposition prior to and independent of the government's conduct.

Rather, the state relied upon Petitioner's telephone conversations with Anderson to show Petitioner's familiarity with cocaine. However, it was Anderson, not Petitioner that use the drug jargon "condos" to refer to cocaine (TR. 43). Similarly, it was Anderson that first suggested that wet cocaine could be sold if someone knew what to do with it, inferring it could be manufactured into crack (TR. 124). Under *Munoz* and *Jacobson*, such evidence cannot be considered in determining predisposition since it is coextensive with the government conduct which is being challenged.

As the state wholly failed to prove predisposition beyond a reasonable doubt, Petitioner's motion to dismiss and or motion for judgment of acquittal should have been granted.

(12)

## CONCLUSION

WHEREFORE, based upon the facts and authorities as related, Petitioner respectfully requests that this most Honorable Court to grant this Petition for Writ of Habeas Corpus and enter an order granting him a new trial or enter a verdict of not guilty.

Respectfully submitted,

*Fritz Maignan*

Fritz Maignan #196119

Mail #4017

Desoto Correctional Institution

P.O. Drawer 1072

Arcadia, Florida 34265

In Prose

## OATH

I declare under penalty of perjury that the foregoing is true and correct. Executed on this 7 day of January 2000.

*Fritz Maignan*

Fritz Maignan

(13)

## CERTIFICATE OF SERVICE

I certify that a true and correct copy of the foregoing Arguments of Petitioner's Memorandum of Law in support of his Petition for Writ of Habeas Corpus has been furnished to the Office of the Attorney General, Criminal Division, Department of Legal Affairs, 1655 Palm Beach Lakes Blvd., Third Floor, West Palm Beach, Florida 33401-2299 by U.S. Mail delivery this __7__ day of __Janury__ 2000.

*Fritz Maignan*
Fritz Maignan #196119

(14)

EXHIBIT (A)

# Office of the Public Defender

FIFTEENTH JUDICIAL CIRCUIT

Criminal Justice Building
421 3rd Street
West Palm Beach, Florida 33401

**RICHARD L. JORANDBY**
Public Defender

Telephone (561) 355-7500

June 17, 1997

Mr. Fritz Maignan
DC# 196119 Mn 4017
DeSoto Correctional Inst.
P.O. Drawer 1072
Arcadia, Fl 34265

Dear Mr. Maignan,

I received your letter dated June 1, 1997 on June 5, 1997. Pursuant to your request, enclosed is a copy of the state's Answer Brief which was filed on March 26, 1997. I apologize for not sending it to you when it was received by me. After carefully reviewing the state's position I determined that a reply brief was not necessary because each issue was fully addressed in the initial brief.

When you review the state's brief you will see that it does not contain a point II. This is because I withdrew that point. Upon receipt of our initial brief, the assistant attorney general contacted the court reporter. The court reporter checked his notes and contacted me. Apparently, his notes reflect that the court used the proper word "intent". However, when the computer transcribed the notes it confused the symbol for "intent" with "attempt." The court reporter then filed a certificate of correction. Based upon the certificate, I was no longer able to argue in good faith that the trial court incorrectly instructed the jury on this aspect of the offense. Rather than present a point which is no longer supported by the record, I withdrew that point from the brief.

As all the briefs have been filed, it is now up to the court to make a decision in the case. I will promptly notify you when an opinion is entered.

Sincerely,

Marcy K. Allen
Assistant Public Defender

enc.
/mka