

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 00-6043-CIV-JORDAN
MAGISTRATE JUDGE SORRENTINO

FRITZ MAIGNAN,

    Petitioner,

vs.

MICHAEL W. MOORE, et al.,

    Respondents.

_____/

<u>PETITIONER'S REPLY TO RESPONDENTS' ANSWER
TO SHOW CAUSE ORDER</u>

   Petitioner, FRITZ MAIGNAN, files this his Reply to
Respondent's Answer to Show Cause Order dated 2d day of May, 2000
and received by him on May 12, 2000, at Glades Correctional
Institution, and as grounds would show unto the Court:

I

   Petitioner takes exception to the Respondents' claim that he
has procedurally defaulted in several factual and legal claims.
The petitioner has shown either "cause and prejudice" or by
asserting fundamental miscarriage of justice by a constitutional
violation that resulted in the conviction of him who was "actually
innocent." <u>Murray v. Carrier</u>, 477 U.S. 478, 496 (1986).
Petitioner is aware that cause must be something external to the
defense. <u>Marek v. Singletary</u>, 62 F.3d 1295, 1302 (11th Cir. 1995).
Petitioner has shown prejudice "not merely that the errors at his
trial created a <u>possibility</u> of prejudice, but that they worked to
his actual and substantial disadvantage, infecting his entire trial



with error of constitutional dimensions." <u>Hollis v. Davis</u>, 941
F.2d 1471, 1480 (11th Cir. 1991)(quoting <u>United States v. Frady</u>,
456 U.S. 152, 170 (1982)(emphasis in original)).

Petitioner relies, moreover, upon the fundamental miscarriage
of justice exception and has shown constitutional error coupled
with "new reliable evicence--whether it be exculpatory scientifiec
evidence, trustworthy eyewitness accounts, or critical physical
evidence---that was not presented at trial." <u>Schlup v. Delo</u>, 513
U.S. 298 (1995).   This exception, of course, is not available
unless "the petitioner shows, as a factual matter, that he did not
commit the crime of conviction." <u>Ward v. Cain</u>, 53 F.3d 106, 108
(5th Cir. 1995).

Petitioner has shown that he has exhausted what he claims
excuses his procedural default in the Florida state courts, to the
extent it constitutes an independent constitutional claim. <u>Murray
v. Carrier</u>, <u>supra</u>, at 488-489(where ineffective assistance of
counsel was and is alleged as cause to excuse a procedural default,
the claim of ineffectiveness must be presented to the state court
as an independent claim).

Petitioner has established cause and prejudice or that there
will be a fundamental miscarriage of justice if his claim(s) that
his trial was deprived of due process and effective assistance of
counsel that rendered the trial to be fundamentally unfair in
violation of the Due Process Clause of the 14th Amendment to the
Constitution.

II

<u>Sohoo v. State</u>, ___So.2d___(Fla. 4th DCA 1999), 24 Fla.L.Weekly

D1219, clearly is applicable to the facts to show that he and his co-defendant (brother) were avidly lured into the entrapment and had eschewed participation in the actual transaction but had been pressured by the "agent provocateur" to do so with his clandestine and reprehensive actions of the <u>unsupervised</u> governmental agent.

III

Petitioner requests this Court to take judicial notice of the collateral proceedings of his co-defendant, <u>Katan Maignan v. State</u> 4th DCA No. 4D00-264, which he adopts as supporting argument in this cause of action as rule and protocol of this Court permit. The appeal to the Florida Fourth District Court of Appeal is pending.  The Court is requested to stay the proceedings pending the final decision of his co-defendant's appeal.  Copies of the pleadings are set forth in Appendix to fully acquaint the Court with co-defendant's factual and legal claims that are intertwined with those raised and presente by petitioner.

<u>CERTIFICATE OF SERVICE</u>

I HEREBY CERTIFY that a true and correct copy of the foregoing has been mailed this 23rd day of May, 2000, to AUGUST A. BONAVITA, Assistant Attorney General, 1655 Palm Beach Lakes Boulevard, Rm 300, West Palm Beach, FL 33401.

Respectfully submitted,

Fritz Maignan, DC#196119
Glades Correctional Institution
500 Orange Avenue Circle
Belle Glade, FL 33430-5221
GCI Telephone: 561/996-5241

Petitioner in Proper Person

FM:ccc

A P P E N D I X

A.  Soohoo v. State, 4th DCA No. 97-3891, May 11, 1999 Opinion

B.  State v. Katan Maignan, Broward County Circuit Court, Case
    No. 95-14021 CF10 [Postconviction Pleadings & Orders]

FM:ccc

A P P E N D I X

A.   Soohoo v. State, 4th DCA No. 97-3891, May 11, 1999 Opinion

B.   State v. Katan Maignan, Broward County Circuit Court, Case
     No. 95-14021 CF10 [Postconviction Pleadings & Orders]

business, Flying Trapeze, Inc., but affirm on all other issues raised in the wife's appeal.

The valuation of a business is calculated by determining the fair market value of the business, which is the amount a willing buyer and a willing seller would exchange assets absent duress. *See Makowski v. Makowski*, 613 So. 2d 924, 926 (Fla. 3d DCA 1993). Typically, fair market value measures the value of the assets of the business plus the value of goodwill. *See id.*

Flying Trapeze is a business whereby the husband primarily constructs and services trapeze equipment for lease or sale exclusively to Club Med. The husband acquired five trapeze units prior to the marriage and thirteen additional units during the marriage. Based upon evidence presented at trial by the couple's experts, the trial court found that the fair market value of Flying Trapeze included only its tangible assets and inventory and that the business had no goodwill value for the purposes of marital distribution. The court valued the marital portion of the business at $137,450 by assigning a value of $10,000 to each trapeze unit acquired during the marriage, adding the value of other inventory, and then subtracting the debt. The trial court, however, failed to include a corporate bank account worth $15,924 in the valuation of the husband's business. Because the trial court used a net asset method to value the business, we find that the court erred in failing to tally the corporate bank account in the valuation.

Additionally, we find that the trial court's failure to assign a goodwill value to Flying Trapeze was not error. Goodwill may be a marital asset subject to division in a dissolution proceeding, if it developed during the marriage and it exists separate and apart from the reputation or continued presence of the marital litigant or the tangible asset. *See Williams v. Williams*, 667 So. 2d 915, 916 (Fla. 2d DCA 1996); *Young v. Young*, 600 So. 2d 1140, 1141 (Fla. 5th DCA 1992). The record contains competent evidence to support the trial court's conclusion that any goodwill of Flying Trapeze "rests solely on the Husband's well-known reputation and abilities and his continued existence and involvement [in the business]."

Accordingly, we reverse in part and remand to allow the trial court to readjust the equitable distribution consistent with the holding in this opinion.

Affirmed in part, reversed in part and remanded. (DELL and POLEN, JJ., concur.)

\* \* \*

Criminal law—Trafficking in cocaine—Entrapment—Objective standard of entrapment—Defendant's due process rights were violated where government's confidential informant agreed with federal authorities to facilitate drug deals in order to reduce his sentence, informant was allowed to structure drug transactions with little supervision, informant offered to help defendant distribute cocaine if defendant were to purchase five kilos, and informant offered defendant a second kilo on credit if defendant were to purchase one kilo—Trial court should have granted defendant's motion for judgment of acquittal based upon entrapment due to egregious conduct on part of confidential informant

KIM SOOHOO, Appellant, v. STATE OF FLORIDA, Appellee. 4th District. Case No. 97-3891. Opinion filed May 19, 1999. Appeal from the Circuit Court for the Seventeenth Judicial Circuit, Broward County; M. Daniel Futch, Jr., Judge; L.T. Case No. 95-17579 CF10A. Counsel: Robert L. Bogen of the Law Offices of Robert L. Bogen, Boca Raton, for appellant. Robert A. Butterworth, Attorney General, Tallahassee, and Don M. Rogers, Assistant Attorney General, West Palm Beach, for appellee.

(STEVENSON, J.) Appellant, Kim Soohoo, was tried by jury, convicted of trafficking in cocaine, and sentenced to fifteen years in prison. We reverse because we find that the trial court should have granted Soohoo's motion for judgment of acquittal based upon entrapment due to egregious conduct on the part of the government's confidential informant.

Soohoo was arrested in the parking lot of the Incredible Universe, a retail store in Broward County, when he met confidential informant Michael Martinez for the prearranged purpose of purchasing two kilograms of cocaine. Martinez, facing a lengthy sentence in California on federal drug charges, agreed with federal authorities to act as a cooperating defendant by facilitating drug deals in order to reduce his sentence. According to Martinez, he recalled that on two occasions, approximately a year earlier in New York, he was present when Kim Soohoo purchased cocaine from a mutual acquaintance. In hopes of setting up a fresh drug deal, Martinez called Soohoo in New York. Martinez testified that he first offered to sell Soohoo five kilograms of cocaine because that was the threshold quantity to elevate a state drug prosecution to a federal prosecution. Soohoo declined to purchase that amount. Martinez testified that as an incentive to set up the deal, he offered to assist Soohoo in selling the drugs by telling him that "if he was to take the five, if he was to purchase five kilograms, that I would help him distribute it in New York through people that I knew down there." Soohoo still declined the offer.

Martinez contacted Soohoo again, this time with a proposal for a smaller quantity of cocaine at $20,000 per kilogram. Even though Martinez was reporting to a supervising FBI agent (Special Agent Fong), Martinez was given autonomy to arrange the details of the transaction himself. Martinez preferred working this way because he knew the "lingo" used by drug dealers. According to Martinez:

[T]hey're [the police] not really street-smart enough to kind of put those things together. . . . That's what I did for a living, you know. There is certain things you can do and you can't do. If you're a cop, there is a certain way you can't approach a drug dealer without him not knowing or knowing that you are a cop.

When Soohoo expressed interest in one kilogram, Martinez offered a second kilogram on credit as an incentive for Soohoo to buy two kilograms instead of just one:

[Martinez:] Well he was buying a kilo. I wanted to make sure he didn't steer away from that as he steered away from five kilos. . . . I wanted to keep him on the hook. . . . I gave him a sales pitch. That's what I do.

Soohoo and Martinez arranged a transfer in Florida. Martinez told Soohoo that he needed $1,000 in advance to cover his travel expenses from California to Florida. Soohoo wired Martinez the requested $1,000, and the two met in Florida, where the transfer and the arrest took place.

Special Agent Fong testified that he counseled Martinez regarding entrapment and instructed him that the FBI would investigate individuals before Martinez could pursue a sting operation. Nevertheless, Fong knew that Martinez was pursuing Soohoo but never conducted an independent evaluation of Soohoo. Although Martinez testified that he kept Fong informed of his interactions with Soohoo and that he played Fong taped conversations between him and Soohoo, Fong testified that he had neither knowledge of the taped conversations nor specific information regarding the deal, except for the fact that it was going to take place in Florida. Shortly before the deal was to be consummated in Florida, Fong turned the supervision of this case over to a Florida agent.

Appellant argues that the trial court erred in denying his motion for judgment of acquittal on the ground of entrapment under both the subjective standard, which analyzes the accused's predisposition to commit the charged offense, and the objective standard, which addresses the conduct of law enforcement officers. We find merit in appellant's argument concerning the objective standard of entrapment.

*Entrapment in Florida*

A thorough analysis of the evolvement of the entrapment defense under both federal and Florida law is set forth in *Munoz v. State*, 629 So. 2d 90 (Fla. 1993). During its embryotic stages, Florida law governing the entrapment defense amounted to a tug-of-war between the legislative and judicial branches. While the United States Supreme Court has always embraced what has been described as the "subjective standard" of entrapment, the Florida Supreme Court envisioned an "objective standard." *Id.* at 91-96; *Sorrells v. United States*, 287 U.S. 435 (1932); *Cruz v. State*, 465 So. 2d 516 (Fla.), *cert. denied*, 437 U.S. 905 (1985). In 1987, however, the Florida legislature enacted section 777.201, Florida Statutes, specifically rejecting the objective standard and adopting a subjec-

tive standard of entrapment. Subsequently, when called upon to address section 777.201, the Florida Supreme Court noted that the legislature had no authority to overrule the court's earlier decisions regarding entrapment under the objective standard, where the accused's due process rights were violated under article I, section 9, of the Florida Constitution. *See Munoz*, 629 So. 2d at 98-99. Thus, as it stands today, Florida courts embrace both the subjective and objective standards of entrapment. *See id.* at 101.

*The objective standard of entrapment*

In *Munoz*, our supreme court, while retreating from the mechanical test for objective entrapment announced in *Cruz v. State*,[1] reaffirmed the continued viability of prior entrapment cases which had been decided using the objective due process analysis:

[W]e have determined, under the circumstances in [*State v.*] *Glosson*[, 462 So. 2d 1082 (Fla. 1985)(concluding that the trial court properly dismissed charges against an accused whose due process rights were violated because the sheriff paid an informant a contingency fee for cooperation and testimony)], that the conduct of law enforcement agents violated the due process clause of the Florida Constitution. We recently reached a similar conclusion in *State v. Williams*, 623 So. 2d 462 (Fla. 1993). In *Williams*, we relied on *Glosson* in finding that the police conduct violated the defendant's due process rights under article I, section 9, regardless of the defendant's predisposition. This was because the conduct engaged in by law enforcement agents, i.e., the manufacture of crack for sale within 1000 feet of a school, was illegal. In making our determination, we noted that defining the limits of due process is difficult because due process is not a technical, fixed concept; rather, it is a general principle of law that prohibits prosecutions brought about by methods offending one's sense of justice. Further, although we stated that we are not unmindful of the problems faced by law enforcement agents in combating crime, we emphasized that certain conduct would not be tolerated in light of the due process considerations mandated by our constitution. "While we must not tie law enforcement's hands in combating crime, there are instances where law enforcement's conduct cannot be countenanced and the courts will not permit the government to invoke the judicial process to obtain a conviction." *Williams*, at 465. Because the legislature cannot abrogate an accused's due process rights, section 777.201 is inapplicable whenever a judge determines as a matter of law that law enforcement personnel have violated an accused's due process rights.

629 So. 2d at 98.

*State v. Anders*, 596 So. 2d 463 (Fla. 4th DCA 1992), is analogous to the instant case. In that case, Livermore, an informant, agreed to help procure arrests of individuals for drug possession in exchange for a lessened sentence. *See* 596 So. 2d at 463. This court found entrapment under the objective due process argument because law enforcement officials did not monitor the informant's activities, did not instruct him on how to avoid entrapment, allowed the informant to set up the reverse-sting operation, gave the informant a time limit in which to procure arrests, and did not ascertain whether Anders had a criminal history. *See id.* The court concluded:

[D]ue process of law will not tolerate the law enforcement techniques employed in this case. Sending an untrained informant out into the community, with no control, no supervision and not one word of guidance or limitation about whom he may approach or what he should do was an invitation to trouble. . . . Here, Livermore was allowed to create a trafficking offense and offender where none previously existed, to engage in negotiations the contents of which no independent witness can verify, and, finally, to determine the potential mandatory prison term and fine the Defendant will face by selecting the amount of drugs to be sold. Due process is offended on these facts.

*Id.* at 465-66 (citation omitted).

The principle of due process imposes upon the courts "the responsibility to conduct 'an exercise of judgment upon the whole course of the proceedings in order to ascertain whether they offend [the] canons of decency and fairness . . . .' " *State v. Williams*, 623 So. 2d at 465 (quoting *Malinski v. New York*, 324 US 401, 416-17

(1945)). Viewing the instant record as a whole and looking to all the circumstances surrounding this sting operation, we conclude, as in *Anders*, that the conduct of confidential informant Martinez, acting on behalf of law enforcement, offends canons of decency and fairness. Perhaps most egregious and offensive in this case was Martinez's offer to help Soohoo distribute the product if he were to purchase five kilos of cocaine and his subsequent offer to give Soohoo a second kilo on credit if he were to purchase one kilo. Because Martinez was working undercover as an agent of law enforcement, this consignment arrangement for the sale of drugs represents governmental conduct which this court cannot condone.

Additionally, although there was a bit more supervision of Martinez than there was of the informant in *Anders*, Martinez was still given too much leeway to independently structure this transaction. Had Martinez been more closely monitored, the missteps taken might never have occurred. Not only did the government fail to investigate Martinez's claims regarding Soohoo's prior drug-related activity, but the government failed to closely monitor Martinez's dealings with Soohoo after he became a target for this operation. Agent Fong was essentially unaware of the details of the transaction and never listened to any taped discussions between Soohoo and Martinez.

We find that the government actions in this case constitute misconduct in violation of the defendant's rights under article I, section 9 of the Florida Constitution, regardless of any predisposition of Soohoo to commit the alleged offense. *See State v. Williams* 623 So. 2d at 462; *State v. Glosson*, 462 So. 2d at 1084 (citing *United States v. Russell*, 411 U.S. 423, 431-32 (1973)). Hence, we need not reach appellant's contention that, pursuant to section 777.201, the State did not rebut, beyond a reasonable doubt, his evidence of lack of predisposition to engage in the subject drug transaction.

Accordingly, appellant's judgment of conviction and sentence are REVERSED. (DELL and HAZOURI, JJ., concur.)

---

[1]Under that test,
Entrapment has not occurred as a matter of law where police activity (1) has as its end the interruption of a specific ongoing criminal activity; and (2) utilizes means reasonably tailored to apprehend those involved in the ongoing criminal activity.

465 So. 2d at 522.

\*  \*  \*

Estates—Claims—Three year statute of limitations under federal Comprehensive Environmental Response Compensation and Liability Act does not preempt Florida nonclaim statute for filing claims against estates—Probate court properly found that claim for contribution from decedent for costs of cleaning up contaminated property under CERCLA was barred by Florida's three month claims filing limitation period—No abuse of discretion in probate court's denial of request for extension and motion for stay to allow federal court to first decide preemption and notice issues—Party whose claim was contingent and unliquidated not entitled to actual notice

U.S. BORAX, INC., Appellant, v. NANCY FORSTER, As Personal Representative of the Estate of CHARLES F. READE, SR., Appellee. 4th District. Case No 97-4107. Opinion filed May 19, 1999. Appeal from the Circuit Court for the Nineteenth Judicial Circuit, Martin County; David J. Harper, Judge; L.T. Case No. 95-297 CP. Counsel: Roger D. Schwenke, Steven C. Dupre, and Susan L. Landy of the Law Office of Carlton, Fields, Ward, Emmanuel, Smith and Cutler P.A., Tampa, for appellant. Edna L. Caruso of the Law Office of Caruso, Burlington, Bohn & Compiani, P.A., West Palm Beach, and Jody H. Oliver of the Law Office of Gary, Dytrich & Ryan, P.A., North Palm Beach, for appellee.

(TAYLOR, J.) The issue in this case is whether the federal Comprehensive Environmental Response Compensation and Liability Act of 1980 (CERCLA), 42 USC § 9601 *et seq.*, preempts Florida's nonclaim statute for filing claims against estates, Fla. Stat. section 733.702 (1995). U.S. Borax, Inc. ("Borax") appeals two orders entered by the Martin County probate court in favor of appellee, Nancy Forster, the personal representative of the Estate of Charles F. Reade. We find that the probate court correctly ruled that CERCLA does not preempt Florida's nonclaim statute and that the

IN THE CIRCUIT COURT OF THE
SEVENTEENTH JUDICIAL CIRCUIT,
IN AND FOR BROWARD COUNTY, FLORIDA

STATE OF FLORIDA,

     Plaintiff,

vs.                         Case No. 95-14021CF1OA

KATAN MAIGNAN,

     Defendant.

_____/

## MOTION FOR POST CONVICTION RELIEF

COMES NOW, the Defendant Pro Se in the above-styled cause, KATAN MAIGNAN, and pursuant to Rule 3.850 of the Florida Rules of Criminal Procedure moves this Honorable Court for an Order vacating the judgments of conviction entered in this action. In support, He further states:

1.  The convictions under attack were entered in the Circuit Court of the Seventeenth Judicial Circuit, in and for Broward County, Florida.

2.  The date the judgments of conviction were entered is June 14, 1996.

3.  The nature of the offenses involved is one count of conspiracy to traffic in cocaine (count one), and one count of carrying a concealed firearm (count two).

4.  The length of the sentence imposed is fifteen years in prison for count one and 309 days county jail, time served, for count two.

5.  The Defendant pleaded not guilty to the charges.

6.   A jury trial was held on June 14, 1996.

7.   The Defendant did testify at the trial.

8.   The Defendant appealed the judgments of conviction to the Fourth District Court of Appeal, West Palm Beach, Florida, on July 1, 1996. The judgments were affirmed by the appellate court on November 14, 1997. <u>See</u>, <u>Maignan (Katan) v. State</u>, 701 So.2d 882 (Fla. 4th DCA 1997).

9.   The Defendant has not filed any petitions, applications, motions, etc., challenging the validity of these judgments of conviction in this or any other court, state or federal.

10. Due to their extensive factual content and legal analysis, the grounds the Defendant relies on are more fully set forth in the accompanying Statement of Facts and supporting Memorandum of Law. In sum, Defendant was denied His Constitutional right to the effective assistance of counsel. Further, the trial court committed fundamental error in giving an incomplete jury instruction on reasonable doubt. These errors, either collectively or individually, served to render Defendant's trial unfair.

11.  The attorneys that represented Defendant are: at all pretrial, trial, and sentencing proceedings, Michael Holden, 212 SE 8th Street, Suite 103, Ft. Lauderdale, Florida 33316-1014; and on direct appeal, Samuel Halpern, 629 SE 5th Ave., Ft. Lauderdale, Florida 33301.

WHEREFORE, Defendant prays this Court will grant all relief to which He may be entitled to, including, but not limted to, the dismissal of all charges, or, a new trial.

2

Respectfully Submitted,


KATAN MAIGNAN, Defendant Pro Se
Sumter Correctional Institution
P.O. Box 667
Bushnell, Florida 33513-0667

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that a true and correct copy of the fore-
going has been furnished via U.S. Mail to the following: Office
of State Attorney, 201 SE 6th Street, Ft. Lauderdale, Florida
33301; on this the ___ day of _____, 1998.


KATAN MAIGNAN, Defendant Pro Se
Sumter Correctional Institution
P.O. Box 667
Bushnell, Florida 33513-0667

## OATH

STATE. OF FLORIDA
COUNTY OF SUMTER

**BEFORE ME,** the undersigned authority, this day personally
appeared KATAN MAIGNAN, who first being duly sworn, says the
following: I am the Defendant in the foregoing Motion for Post
Conviction Relief, I have read this Motion, and I have personal
knowledge of the facts and matters therein set forth and alleged.
I further state that each of these facts and matters is true and
correct.

KATAN MAIGNAN
Sumter Correctional Institution
P.O. Box 667
Bushnell, Florida 33513-0667

**SWORN AND SUBSCRIBED TO,** before me, this the ____ day of
_____, 1998.

**NOTARY PUBLIC--STATE OF FLORIDA**
My Commission Expires:

Produced Florida Department of Corrections Inmate Picture
Identification.

4

IN THE CIRCUIT COURT OF THE
SEVENTEENTH JUDICIAL CIRCUIT,
IN AND FOR BROWARD COUNTY, FLORIDA

STATE OF FLORIDA,

    Plaintiff,

vs.                         Case No. 95-14021CF10A

KATAN MAIGNAN,

    Defendant.

_____/

## STATEMENT OF GROUNDS AND SUPPORTING FACTS

### ISSUE ONE: TRIAL COUNSEL PROVIDED INEFFECTIVE ASSISTANCE BY FAILING TO CALL JOSEPH CLARK, THE CONFIDENTIAL INFORMANT IN THIS CASE, TO TESTIFY AT TRIAL.

Trial counsel was ineffective for failing to call as a witness at this trial Joseph Clark. Mr. Clark, who was the confidential informant in this case, would have testified he initiated the contact between himself and Fritz Maignan, Katan Maignan's brother and codefendant. In addition to this, Mr Clark would have also testified he a) was paid on a contingency basis for his informing services; b) had promised both Fritz and Katan big, easy money dealing the cocaine he was setting up for them to purchase; c) that he was relentless in trying to bring the Maignans into the drug trade by making numerous, uninvited appearences at Fritz's job, and by making unsolicited telephone calls to both Maignans; and d) that he had never seen either of the Maignan brothers selling, dealing, or using cocaine.

His testimony was crucial in establishing an independent source of credible evidence to show the Maignans were in fact objectively entrapped by government agents. While it is true some of this proffered testimony was given by Fritz and Katan at trial, no such testimony was elicited from any state witness which left the jury to evaluate the codefendants' uncorroborated statements. Had the jury heard this testimony from one of the state's own, especially from the man responsible for creating the underlying events, there is a reasonable probability their verdict would have been different as the entrapment defense would have been much easier to believe. Defendant has identified the name of this witness, the witness was availible to testify, and his testimony would have changed the outcome of the trial. Therefore, defense counsel was ineffective for failing to call Joseph Clark to testify. Thus, a new trial must be ordered.

**ISSUE TWO: THE TRIAL COURT COMMITTED FUNDAMENTAL ERROR IN ADMITTING INTO EVIDENCE, OVER DEFENSE OBJECTION, THE RECORDED THREE-WAY TELEPHONE CONVERSATION BETWEEN THE CODEFENDANTS, THE D.E.A. AGENT, AND THE INFORMANT.**

In this case, the state's theory of conspiracy was premised on the notion the Maignans intended to possess cocaine which they would steal from the undercover D.E.A. agent. The state's entire case was based on two trial developments: 1) the D.E.A. agent's testimony he _believed_ Katan would try to rob him once he showed him the cocaine; and 2) a three-way telephone conversation between the Katan, the agent, and the informant. It was this call the prosecutor referred to as proving both his theories that the

2

Maignans revived the once-cancelled drug deal and that they intended to rob the agent during the new deal. Specifically, the prosecutor stated Katan's statements during the conversation "Why can't we do this [the drug deal] one on one" indicated Katan's plan to get the agent alone which would make him an easier target.

The problem is that when the prosecutor sought to introduce the recorded conversation, he stated he wanted the tape admitted simply to prove the conversation did in fact take place, as opposed to proving the validity of his theory. This position is belied by the prosecutor's closing arguments to the jury. The tape was in fact used to prove the truth of the matter asserted, that being Katan intended to obtain the agent's cocaine by stealing it. This renders the tape inadmissible hearsay because the informant never testified at trial. Furthermore, the error was reversible because the hearsay was used as the cornerstone of the state's case against the Maignans.

Trial counsel properly objected to the tape as it was being admitted. The court overruled and it was published to the jury. However, once the prosecutor revealed his true motive by asking the jury to question Katan's request for a one on one deal, the trial court committed fundamental error when it failed to revisit counsel's objection and order the jury to disregard all testimony heard on the tape and the prosecutor's argument, or order a mistrial.

Defendant is not unmindful that this claim, at first blush, presents an issue which could have been raised on direct appeal.

3

However, this error is fundamental in nature, and a fundamnetal error can be raised at <u>any</u> time, including post conviction proceedings.

In sum, the prosecutor misled the court as to his reasons for seeking admission of the taped conversation. The prosecutor then evinced his true purpose for admitting the tape in closing arguments and the error was fundamental. As such, a new trial must be ordered.

**<u>ISSUE THREE: TRIAL COUNSEL PROVIDED<br>INEFFECTIVE ASSISTANCE BY FAILING<br>TO SUFFICIENTLY ARGUE HIS MOTION<br>FOR JUDGMENT OF ACQUITTAL ON THE<br>FIREARM CHARGE.</u>**

While Katan Maignan adamently denies having <u>any</u> knowledge of where the gun found in his car came from, it is still an undisputed fact of this case the gun was not loaded. It is also an undisputed fact of this case no bullets were found either on Katan's person or in his vehicle. With these facts in mind, and considering the state of the law at the time of Katan's trial, defense counsel should have had a guaranteed victory in his motion for judgment of acquittal on the carrying a concealed firearm charge.

However, in arguing the motion, both at the close of the state's case-in-chief and at the close of the defense case-in-chief, defense counsel never specifically addressed the fact no ammunition was found at the crime scene. Had he done so, the motion for judgment of acquittal would have been granted and the Defendant would not stand convicted of this crime. As such, counsel should be found to have rendered ineffective assistance

4

in this respect and this Court should vacate the judgment of conviction for the firearm charge and further order the charge be dismissed.

## ISSUE FOUR: TRIAL COUNSEL PROVIDED INEFFECTIVE ASSISTANCE BY FAILING TO INCORPORATE A SUFFICIENCY OF THE EVIDENCE ARGUMENT IN HIS MOTION FOR JUDGMENT OF ACQUITTAL ON THE CONSPIRACY TO TRAFFIC COCAINE CHARGE.

In arguing his motion for judgment of acquittal at the close of the state's case-in-chief, defense counsel only made mention of the fact the codefendants were entrapped. There was absolutely no discussion whatsoever on the sufficiency of the evidence set forth by the state to prove a conspriracy. Nor was there any discussion whatsoever on whether the plan to steal the cocaine was solely Katan's.

At the close of all evidence, defense counsel again moved for judgment of acquittal on the conspiracy charge and again failed to assert the plan to steal the cocaine--the method in which possession of the cocaine was to be obtained--was exclusively Katan's.

The following facts are not in dispute. The only evidence presented by the state on the possession element of conspiracy was that Katan and Fritz met with the D.E.A. agent and negotiated a price for two kilograms of cocaine. However, shortly thereafter, all parties agreed the deal was off. Then, on his own initiative and with no further involvement from Fritz, Katan decided to revive the deal. There was no evidence presented Fritz had any

5

knowledge of this last agreement between Katan and the agent.
Consequently, there was no evidence presented by the state,
because none existed, that there was a conspiracy between the
codefendants to rob the agent. Thus, the state's chosen theory
of prosecution was not proven. However, defense counsel chose to
argue Fritz's abandonment of the drug deal implied a unilateral
act of Katan as opposed to a conspiracy. While this could be
considered a sound strategy had no other argument existed, an
even more meritorious argument did exist and counsel failed to
utilize it.

    Had counsel used the lack of a sufficient amount of evidence
to prove a conspiracy to rob the agent instead of, or as an
alternative to, the abandonment argument, there is a reasonable
probability his motion for judgment of acquittal would have been
granted as there was simply more evidence proving the plan to
rob the agent was exclusively Katan's. At the very least, this
sufficiency of the evidence argument would have been preserved
for appellate review. In light of these facts, counsel must be
found to have rendered ineffective assistance and a new trial
ordered.

**ISSUE FIVE: TRIAL COUNSEL PROVIDED
INEFFECTIVE ASSISTANCE BY FAILING
TO OBJECT TO AN INCOMPLETE JURY
INSTRUCTION ON THE STATE'S BURDEN
OF PROOF AS TO PROVING THE PREDIS-
POSITION OF THE DEFENDANT BEYOND A
REASONABLE DOUBT.**

    During its instructions to the jury, the trial court told
them the Defendant had to prove beyond a preponderance of the

6

evidence the Defendant was entrapped. The court was then required to further state the prosecution had the burden of proving beyond a reasonable doubt the Defendant was predisposed to commit the offense charged. It did not and counsel failed to object to the incomplete instruction.

The state of the law in this regard was clear at the time of Defendant's trial. The burden of proof was on the state to prove predisposition beyond a reasonable doubt. However, the instruction as given in this case improperly shifted this burden to the Defendant and this was reversible error.

As this was an incomplete and misleading instruction on reasonable doubt, counsel must be found to have rendered ineffective assistance by failing to object to it and by failing to request the complete instruction. As such, a new trial is necessary in which Defendant's jury is _properly_ instructed on the state's burden of proof as to the entrapment defense.

**ISSUE SIX: TRIAL COUNSEL PROVIDED INEFFECTIVE ASSISTANCE BY FAILING TO MOVE TO DISMISS THE CONSPIRACY TO TRAFFIC COCAINE CHARGE BASED ON THE D.E.A. AGENT'S IMPROPER SUPERVISION OF THE CONFIDENTIAL INFORMANT WHICH IN TURN VIOLATED DEFENDANT'S RIGHT TO DUE PROCESS OF LAW AND HIS RIGHT TO PRIVACY.**

Joseph Clark approached Fritz Maignan in New York City and after several, uninvited appearances and numerous attempts, finally convinced Fritz and Maignan to enter the drug trade with promises of big, easy money. At this point in time, neither Fritz or Katan had any drug related criminal history and Mr.

7

Clark had _never_ seen either of the Maignan's selling, using, or buying cocaine.

Once Mr. CLark advised his superior, Heath Anderson, of his contact with the Maignans, Mr. Anderson ran a criminal history check on both the brothers and again, no drug related history was discovered. (Trial Transcript, pp.128-129). Thus, it is undisputed there was no criminal activity in this case _until_ _Joseph_ _Clark_ _created_ _it_. The police activity _after_ Mr. Clark's initial meetings with the codefendants then, did _not_ have at its end the interuption of specific on-going criminal activity and did _not_ utilize means reasonably tailored to apprehend those involved in on-going criminal activity.

With all of these undisputed facts in mind, and considering these facts were not in dispute even before trial, defense counsel was ineffective for failing to move to dismiss the conspiracy to traffic cocaine charge on this very theory. Had he done so, due to the outrageousness of the police conduct here, there is a reasonable probability the motion to dismiss would have been granted. Therefore, the conspiracy charge should be dismissed on this reason alone.

8

<u>OATH</u>

**STATE OF FLORIDA**
**COUNTY OF SUMTER**

    **BEFORE ME,** the undersigned authority, this day personally appeared KATAN MAIGNAN, who first being duly sworn, says the following: I am the Defendant in the foregoing motion for post conviction relief, I have read this motion, and I have personal knowledge of the facts and matters therein set forth and alleged. I further state that each of these facts is true and correct.

                    _____
                    KATAN MAIGNAN
                    Sumter Correctional Institution
                    P.O. Box 667
                    Bushnell, Florida 33513-0667

    **SWORN AND SUBSCRIBED TO,** before me, this the ____ day of _____, 1998.

                    _____
                    **NOTARY PUBLIC--STATE OF FLORIDA**
                    My Commission Expires:

    Produced Florida Department of Corerctions Inmate Picture Identification.

IN THE CIRCUIT COURT OF THE
SEVENTEENTH JUDICIAL CIRCUIT,
IN AND FOR BROWARD COUNTY, FLORIDA

STATE OF FLORIDA,

    Plaintiff,

vs.                          Case No. 95-14021CF10A

KATAN MAIGNAN,

    Defendant.

_____/

## MEMORANDUM OF LAW IN SUPPORT OF MOTION FOR POST CONVICTION RELIEF

### INTRODUCTION

In the preceding motion for post conviction relief, Katan Maignan has made allegations concerning both the constitutional effectiveness of his trial attorney, and fundamental error by the trial court. Here, Defendant will provide a legal analysis of each of his claims in order to more fully prove his entitlement to a new trial.

### THE STANDARD OF COMPETENT ATTORNEY PERFORMANCE.

The test for determining whether counsel in a criminal case provided ineffective assistance was established in the case of Strickland v. washington, 466 U.S. 688, 104 S.Ct. 2052, 80 L.Ed. 2d 674 (1984) and adopted by the Florida Supreme Court in the case of Jackson v. State, 452 So.2d 533 (Fla. 1984).

For the defendant to prevail in his claims of ineffective assistance, he must prove that particular acts or omissions of his trial counsel are outside the broad range of reasonably

competent performance under prevailing professional standards, and the clear and substantial deficiencies shown must be further demonstrated to have so affected the fairness and reliability of the proceedings that confidence in the outcome is undermined. Maxwell v. Wainwright, 490 So.2d 927, 932 (Fla. 1986). The claims raised in the foregoing motion for post conviction relief and more fully analyzed here set forth specific acts and omissions of trial counsel that do undermine the confidence of this judgment of conviction.

## THE STANDARD OF FUNDAMENTAL ERROR.

Rule 90.104(3) of the Florida Evidence Code states that "...nothing shall preclude a court from taking notice of fundamental errors affecting substantial rights, even though such errors were not brought to the attention of the trial judge." Fundamental error is defined as "error wich goes to the foundation of the case or goes to the merits of the cause of action, and must be basic to judicial decision under review and equivalent to a denial of due process." Hopkins v. State, 632 So.2d 963 (Fla. 1994). Finally, fundamental error may be raised for the first time at any point, including in post conviction proceedings. Patel v. State, 679 So.2d 850 (Fla. 1st DCA 1996).

## LAW AND ANALYSIS

### ISSUE ONE: TRIAL COUNSEL PROVIDED INEFFECTIVE ASSISTANCE BY FAILING TO CALL JOSEPH CLARK, THE CONFID-ENTIAL INFORMANT IN THIS CASE, TO TESTIFY AT TRIAL.

When the defense of entrapment is raised by the accused in a

2

criminal trial, he has the burden of proving by a preponderance
of the evidence the government or one of its agents improperly
induced him to commit the offense charged. If this burden is met,
the state, in order to defeat the affirmative defense and have the
cause sent to the jury, must prove beyond a reasonable doubt the
accused was predisposed to commit the offense. Munoz v. State, 629
So.2d 90, 99 (Fla. 1993).

   In this case, the only evidence offered by defense counsel
to prove improper inducement was the trial testimony of the
codefendants. Had Joseph Clark been called, his testimony would
not only have corroborated their otherwise self-serving statements,
but since he was the creator of the alleged conspiracy, his
testimony that yes, he initiated the contact with the codefendants
even though he knew they were not involved in the drug trade, and
that yes, he had on several occassions promised the codefendants
big, easy money in the drug trade even though they were initially
unwilling to cooperate, would have provided first-hand,
determinitive evidence of improper inducement. It logically
follows that in the very least this testimony would have
positively influenced the jury's consideration of Katan's
entrapment defense. There is also a reasonable probability Mr.
Clark's testimony would have convinced the trial court to grant
Katan's request for judgment of acquittal on the conspiracy to
traffic cocaine charge.

   In Palmer v. State, 683 So.2d 678 (Fla. 4th DCA 1997) the
Fourth District Court of Appeal adopted the test set forth by the

3

First District in the case of <u>Highsmith v. State</u>, 617 So.2d 825
(Fla. 1st DCA 1993) for determining what constitutes a facially
sufficient claim of ineffective assistance of counsel based on
failing to call a witness at trial. Pursuant to <u>Highsmith</u> and
<u>Palmer</u>, a facially sufficient claim under these circumstances is
made when a) the witness is identified; b) the substance of the
witness' testimony is alleged; and c) the prejudicial impact of
the omission of the witness' testimony is explained. Defendant
meets this test and is thus entitled to an evidentiary hearing to
more fully develope this claim. <u>Saunders v. State</u>, 23 Fla. L.
Weekly D266 (Fla. 4th DCA, Jan. 21, 1998).

**ISSUE TWO: THE TRIAL COURT COMMITTED
FUNDAMENTAL ERROR IN ADMITTING INTO
EVIDENCE, OVER DEFENSE OBJECTION,
THE RECORDED THREE-WAY TELEPHONE CO-
NVERSATION BETWEEN THE CODEFENDANTS,
THE D.E.A. AGENT, AND THE INFORMANT.**

In the case of <u>Aneiro v. State</u>, 674 So.2d 913 (Fla. 4th DCA)
<u>review denied</u>, 686 So.2d 582 (Fla. 1996) the Fourth District Court
of Appeal was confronted with a virtually indistinguishable case.
There, the state sought to introduce the tape-recorded hearsay of
a confidential informant. On this tape, the informant spoke with
Jose Aneiro to arrange a cocaine delivery. The state's theory of
admissiblity was that the tape recording served to prove the
nature of the act, thus admissible as verbal acts evidence. The
appellant, at trial, objected on the basis the tape recording was
hearsay as the informant was not testifying. The trial court
overruled the objection and admitted the tape which was then
published to the jury.

4

It wasn't until the closing arguments in the <u>Aneiro</u> trial that the prosecutor's true purpose in seeking admission of the tape came to light. During the summation, the prosecutor argued the tape proved Jose Aneiro's testimony he didn't even know what kind of car the informant would be delivering the cocaine in (which implied Mr. Aneiro could not have been involved in a conspiracy) was false. <u>Aneiro v. State</u>, 674 So.2d at 914.

On direct appeal appellant argued this ulterior motive was in fact the true intent of the prosecutor in seeking the tape's admission. He further argued the tape was used to prove the truth of the matter asserted, that being the state's position Mr. Aneiro's statements denying knowledge of the type of vehicle the cocaine would be delivered in was false. The Fourth District agreed and reversed and while the court did not specifically hold the appellant's one objection to the admission of the tape as it was introduced was sufficient to preserve the issue for review, the court did comment on the sole objection and proper preservation was implied. <u>I.d.</u>, at 913.

<u>Aneiro</u> is on all fours with this case. Here, the state attorney argued during trial the telephone conversation between the codefendants, the agent, and the informant, was admissible as verbal acts evidence in response to the defense hearsay objection. (Trial Transcript, pp.77-80). The trial court agreed with the state, admitted the tape, and published it to the jury. Then, in closing argument, the prosecutor argued to the jury the tape proved Katan Maignan was preparing to rob the undercover D.E.A.

5

agent. (Trial Transcript, p.414). And the prosecutor did not stop with this one improper reference. He also argued the three-way conversation proved the more general allegation of conspiracy when he stated "You heard the tape on August 10th when there is a three way between Fritz Maignan, and the informant, and Heath Anderson where Maignan says hey, remember when I told you I was going to Florida and to put me on to somebody. That's what this is all about." (Trial Transcript, p.418)(Emphasis supplied). There is simply no other way to characterize the purpose this hearsay served other than proving the truth of the matters asserted: conspiring to possess cocaine by stealing it.

Since the true purpose behind the admission of the tape was impermissible and because defense counsel made a timely and specific hearsay objection to the admission of this tape, the trial court did err in allowing its admission. Because the erroneously admitted hearsay was used to both support the state's theory of prosecution and impeach the credibility of the defendant who denied trying to steal the cocaine, the error is fundamental in nature. Thus, a new trial must be ordered. Aneiro v. State, 674 So.2d at 913.

## ISSUE THREE: TRIAL COUNSEL PROVIDED INEFFECTIVE ASSISTANCE BY FAILING TO SUFFICIENTLY ARGUE HIS MOTION FOR JUDGMENT OF ACQUITTAL ON THE FIREARM CHARGE.

Three years before Katan Maignan's trial began, the Florida Supreme Court released its opinion in the case of Ashley v. State, 619 So.2d 294 (Fla. 1993). In Ashley, the Court held an unloaded

6

firearm is not readily accessible for immediate use within the
meaning of the statutory scheme set forth in sections 790.01(2)
and 790.25(5), Florida Statutes, when no ammunition is found in
the vehicle the gun was located in. Ashley v. State, 619 So.2d at
296.

Here, as in Ashley, no bullets were found in the gun, on
Katan's person, in his vehicle, or in the vicinity of his vehicle.
This firearm, therefore, was not readily accessible for immediate
use. These facts are not in dispute. (Trial Transcript, pp.226,
241, 243, 244). Furthermore, the prosecutor failed to mention
the status of the gun being unloaded at all in his closing.
(Trial Tracsript, pp.274-75).

The problem is defense counsel made absolutely no mention of
the lack of bullets during his motion for judgment of acquittal on
the firearm charge. He simply argued there was no evidence
presented by the state that the gun was capable of being fired.
(Trial Transcript p.272). On direct appeal, Defendant's appellate
attorney raised the issue of the improper denial of the motion
for judgment of acquittal and specifically addressed the lack of
ammunition and made numerous references to Ashley. The state
countered with the assertion this specific claim of lack of
bullets was not presented to the trial court, therefore, the
issue was not properly preserved for review. The appellate court
affirmed.

An attorney is under an obligation to discover the law
applicable to the case at hand. The Florida Bar v. Kinney, 606 So.

7

2d 367 (Fla. 1992). In this case, knowing his client was charged
with carrying a concealed weapon and knowing (through discovery
depositions) the state could not establish the gun was readily
accessible for immediate use, defense counsel should have not
only discovered <u>Ashley</u> but built his motion for judgment of
acquittal on this charge around it. To the Defendant's misfortune,
he did neither. It should be obvious that had counsel discovered
<u>Ashley</u> he would have incorporated it into his argument. Furthermore,
had <u>Ashley</u> been incorporated into his argument, there is a
reasonable probability the trial court's ruling on the motion
would have been different. As such, this court should vacate the
judgment of conviction on the firearm charge and further order this
charge dismissed.

**ISSUE FOUR: TRIAL COUNSEL PROVIDED
INEFFECTIVE ASSISTANCE BY FAILING
TO INCORPORATE A SUFFICIENCY OF
THE EVIDENCE ARGUMENT IN HIS
MOTION FOR JUDGMENT OF ACQUITTAL
ON THE CONSPIRACY TO TRAFFIC COCA-
INE CHARGE.**

In this case, there was no evidence presented by the state
to even suggest a conspiracy bewteen Fritz and Katan Maignan to
rob the D.E.A. agent of his cocaine. Pursuant to Rule 3.380(b) of
the Florida Rules of Criminal Procedure defense counsel should
have incorporated this particular argument in his motion for
judgment of acquittal in order to have both the trial and appellate
courts entertain it. He did not and instead argued the issue of
subjective entrapment.

<u>Strickland v. Washington</u>, <u>supra</u>, states an attorney renders

8

ineffective assistance when his acts or omissions prejudice his client's interests and there is a reasonable probability that but for counsel's error, the outcome of the proceedings would have been different. Id., 104 S.Ct. at 2068. In this case, that means Defendant has to both prove counsel's decision to pursue the entrapment argument and ignore the sufficiency of the evidence argument was erroneous and prejudicial. He believes is was.

Defendant does not dispute there were colorable claims of entrapment and abandonment here to be made. However, the sufficiency of the evidence claim was at least as meritorious as these other claims, if not more. Counsel simply had to ask the court to consider the absence of any evidence establishing Fritz's knowledge of Katan's alleged plan to rob the agent. Had he done so, the motion then would have been granted. Thus, under Strickland, counsel was ineffective and as a result, the conviction for conspiracy to traffic cocaine should be vacated and the charge dismissed.

**ISSUE FIVE: TRIAL COUNSEL PROVIDED INEFFECTIVE ASSISTANCE BY FAILING TO OBJECT TO AN INCOMPLETE JURY INSTRUCTION ON THE STATE'S BURDEN OF PROOF AS TO PROVING THE PREDIS- POSITION OF THE DEFENDANT BEYOND A REASONABLE DOUBT.**

In Vazquez v. State, 700 So.2d 5 (Fla. 4th DCA 1997) the court held the standard jury instructions on entrapment, the very same jury instructions given in this case, do not accurately and completely present the state of the law on this issue. Vazquez, 700 So.2d at 13.

9

The court there reversed appellant's convictions and remanded for a new trial because the jury was not instructed that the state carries the burden of proving beyond a reasonable doubt the defendant was predisposed to commit the offense charged. Id. Because Katan Maignan received the indentical instructions in his trial and because the law was already well-established, defense counsel was ineffective for failing to object and request the complete entrapment instruction.

While it seems this Defendant is claiming his trial attorney should have predicted the court's opinion in Vazquez, as previously stated, the underlying principles of the Vazquez decision were already in place at the time of Katan's trial.

In State v. Bryan, 287 So.2d 73 (Fla. 1973) cert. denied, 417 U.S. 912, 94 S.Ct. 2611, 41 L.Ed.2d 216 (1974) our state supreme court held that despite the approval of the standard jury instructions, trial judges should still deviate from them when it becomes necessary. With this in mind, and considering the recent case of Munoz v. State, 629 So.2d 90 (Fla. 1993), the Vazquez court held it was error for the trial court to fail to include in its instruction on entrapment a statement that the government, not the defendant, has to prove predisposition beyond a reasonable doubt. Id.

In this case, the same standard the appellate court in Vazquez imposed upon the trial court, should be imposed upon trial counsel. That the state be required to prove predisposition beyond a reasonable doubt was a well-settled principle of law in Florida

10

at the time of Katan's trial. Thus, counsel had a duty to ensure his client's jury was presented with the correct law. It wasn't, the improper instruction concerned the critical area of reasonable doubt, and counsel failed to object to this. As there is a reasonable probability the jury's verdict would have been different had it received the correct instruction, counsel was ineffective and a new trial must be ordered.

**ISSUE SIX: TRIAL COUNSEL PROVIDED INEFFECTIVE ASSISTANCE BY FAILING TO MOVE TO DISMISS THE CONSPIRACY TO TRAFFIC COCAINE CHARGE BASED ON THE D.E.A. AGENT'S IMPROPER SUPERVISION OF THE CONFIDENTIAL INFORMANT WHICH IN TURN VIOLATED DEFENDANT'S RIGHT TO DUE PROCESS OF LAW AND HIS RIGHT TO PRIVACY.**

The Fifth and Fourteenth Amendments to the United States Constitution prohibit government sponsored criminal investigations that amount to nothing more than fishing expeditions. See, U.S. v. Hunt, 749 F.2d 1078, 1087 (4th Cir. 1984). Furthermore, if the government's conduct in one of these fishing expeditions, or a sting operation is so active that its conduct fabricated elements of the offense ultimately charged, it might be considered a violation of due process to prosecute the defendant. See, U.S. v. Steinhorn, 739 F.Supp. 268 (D.Md. 1990).

Thus, it logically follows that the unsupervised actions of a confidential informant can give rise to due process and privacy challenges to a conviction when the informant's conduct, due to the government's failure to supervise, was so outrageous as to create an otherwise non-existant proclivity in the accused to

11

commit the offense charged.

In this case, it is an undisputed fact Joseph Clark initiated the contact with the codefendants. (Trial Transcript. p.299). It is also undisputed Mr. Clark never saw the codefendants selling, buying, or using cocaine--ever. (Trial Transcript, p.345). Therefore, this Court should find there was no on-going criminal endeavors on the part of the Defendant. In essence, the government agents here created crime where none existed. This is impermissible. Lewis v. State, 597 So.2d 842 (Fla. 3d DCA 1992). And, as the government's quest for a conviction in this case led to the apprehension of Katan Maignan, an otherwise law-abiding citizen who, if left to his own devices, likely would never have run afoul of the law, this court could have, and should have, interfered by granting a motion to dismiss. Jackson v. U.S., 503 U.S. 540, 553-54, 112 S.Ct. 1535,1543, 118 L.Ed.2d 174 (1992). Consequently, the conviction for conspiracy must be vacated and the charge dismissed.

## OATH

STATE OF FLORIDA
COUNTY OF SUMTER

**BEFORE ME,** the undersigned authority, this day personally appeared KATAN MAIGNAN, who first being duly sworn, says the following: I am the Defendant in the foregoig memorandum of law in support of motion for post conviction relief, I have read this memorandum of law, and I have personal knowledge of the facts and matters therein set forth and alleged and that each of these facts and matters are true and correct.

 

 

KATAN MAIGNAN
Sumter Correctional Institution
P.O. Box 667
Bushnell, Florida 33513-0667

**SWORN AND SUBSCRIBED TO,** before me, this the ___ day of
_____, 1998.

 

 

NOTARY PUBLIC--STATE OF FLORIDA
My Commission Expires:

Produced Florida Department of Corrections Inmate Picture Identification.

13

IN THE CIRCUIT COURT OF
THE SEVENTEENTH JUDICIAL
CIRCUIT IN AND FOR
BROWARD COUNTY, FLORIDA

STATE OF FLORIDA        )      CASE NO.: 95-14021 CFA
                        )
                        )      JUDGE: GOLD
                        )
vs.                     )
                        )
KATAN MAIGNAN        )
                        )
                        )
_____Defendant_____)

## RESPONSE TO DEFENDANT'S MOTION FOR

## POST-CONVICTION RELIEF

**COMES NOW**, the State of Florida, by and through the undersigned Assistant State Attorney, and responds to the Defendant's Motion for Post-Conviction Relief pursuant to Rule 3.850 of the Florida Rules of Criminal Procedure and the Order of this Honorable Court as follows:

1. The allegation of ineffective assistance of counsel for failure to call Joe Clark, the confidential informant, is without merit. The motion is legally insufficient in that the defendant has not shown that this witness was available; that the witness would have testified consistently as alleged in the motion; and that there was a prejudicial impact by the omission of this testimony. *Higsmith v. State*, 617 So.2d 825 (Fla. 1st DCA 1993). Additionally, there was no basis to call this witness since counsel was able to

1

cross-examine Agent Anderson about the fact that Clark was a paid informant, and about the control, or lack of control, of this informant (Exhibit I, pp. 128-131, 141-155, 162, 178-202). Additionally, the defendant testified about allegedly being unlawfully induced to be involved in this deal (Exhibit II). Since the facts that the defendant wished to present to the jury were brought out in testimony, this ground must be summarily denied.

2. The allegation of the defendant that the trial court erred in admitting the tape of the three way conversation between Joe Clark, Agent Anderson, and defendant Fritz Maignan is not a ground upon which relief can be granted. As admitted in the motion, the issue was preserved by objection at trial, and, therefore, was or could have been reviewed by the appellate court on direct appeal. Consequently, this issue is not cognizable in a motion for post-conviction relief, and must be summarily denied. *Koon v. Dugger*, 619 So.2d 246 (Fla. 1993); *Medina v. State*, 573 So.2d 293 (Fla. 1990).

3. The allegation of ineffective assistance of counsel for failing to incorporate a sufficiency of the evidence argument in the judgment of acquittal is refuted by the record. The judgment of acquittal motions at the end of the State's case (Exhibit III) and at the end of all evidence (Exhibit IV) clearly incorporated all arguments, including sufficiency of the evidence. The Court denied both motions finding that the evidence was sufficient to present the case to the jury (Exhibits III and IV). Furthermore, issues regarding sufficiency of the evidence were raised on appeal, and,

2

therefore, are not cognizable in a motion for post-conviction relief (Exhibit V). Since the record refutes the arguments of the defendant, and the issue of sufficiency of the evidence was raised on appeal, this ground must be summarily denied.

4. The allegation of the defendant that the case of *Vazquez v. State*, 700 So.2d 5 (Fla. 4th DCA 1997) provides a basis for relief is without merit. This issue was raised on appeal and on rehearing, and, consequently, is not cognizable in a motion for post-conviction relief (Exhibit VI).

5. The allegation of the defendant that trial counsel was ineffective for failing to move to dismiss the information based on the lack of supervision of the confidential informant is without merit. Trial counsel filed a motion to adopt the motion to dismiss based on a due process violation committed (Exhibit VII and VIII). Although the Court argued that the motion must be summarily denied as to this co-defendant (Exhibit VIII), the Court denied the motion (Exhibit IX). Since trial counsel did move to dismiss this matter, the motion was heard and rejected by Judge Tyson, this ground must be summarily denied.

**WHEREFORE**, the State of Florida respectfully requests this Honorable Court to deny the Defendant's Motion for Post-Conviction Relief.

**I HEREBY CERTIFY** that a copy of the foregoing was furnished by U.S. Mail to Katan Maignan, Defendant, Pro Se, Inmate #196120, Sumter Correctional Institution, P.O. Box 667, Bushnell, Florida 33513-0667, this 16th day of February, 1999.

MICHAEL J. SATZ
STATE ATTORNEY

By: _____
    JOEL SILVERSHEIN
    Assistant State Attorney
    Florida Bar No: 608092
    Room 675
    201 S.E. 6th Street
    Fort Lauderdale, FL 33301
    Telephone (954) 831-7932

4

IN THE CIRCUIT COURT OF THE SEVENTEENTH JUDICIAL
CIRCUIT IN AND FOR BROWARD COUNTY, FLORIDA
CRIMINAL DIVISION


STATE OF FLORIDA

vs.                                      CASE NO. 95-14021 CF10A

KATAN MAIGNAN,

        Defendant.
_____/


DEFENDANT KATAN MAIGNAN'S BELATED
REPLY TO STATE'S ANSWER TO SHOW CAUSE ORDER


    Defendant, KATAN MAIGNAN, files this his Belated Reply to the
State's Answer to Show Cause Order dated 16 February 1999, and as
grounds would show unto the Court:

                             I

    The State Attorney Office exceeded the time allowance for the
filing of the State's Response to the Order to Show Cause within a
timely manner that constituted inexcusable neglect in performance
of professional duties of the Office of State Attorney.  Since the
State Attorney has been allowed to file an untimely Answer to the
Show Cause Order, comity requires that the Defendant be allowed to
file this belated Reply to the State's Answer. Cf, Bleitner v. Wel-
born, 15 F.3d 652, 653 (7th Cir. 1994)[Denial of default judgment
in favor petitioner was proper when state neglected to file timely
response ... and allowing state to file untimely response].

                             II

    Defendant properly alleged that he was deprived of effective
assistance of trial counsel, when he failed to take deposition of

Joseph Clark nor sought to have this confidential informant to be subpoenaed and appear as a defense witness on behalf of Defendant Katan Maignan.  Defendant had spoken at length with trial counsel on having him deposed and to appear in the pre-trial and trial proceedings to show that he was a <u>paid</u> informant that had induced him and his brother to become an unwitting participant in a scheme for his own self-interests rather than to prevent criminal activity in New York or Florida.  Instead Clark had created criminal objectives and purposes that needed to be explored by trial counsel in the affirmative defense of entrapment as a matter of law and fact(s).

Trial counsel's failure to interview, investigate, depose, or call Clark as a defense witness [hostile] in support of his defense theory constituted ineffective assistance of counsel in violation of the Sixth Amendment to the Constitution.  See <u>Futch v. Dugger</u>, 874 F.2d 1483 (11th Cir. 1989)(failure to call witness in support of defense); <u>Dickson v. Wainwright</u>, 683 F.2d 348, 351-52 (11th Cir. 1982)(failed to call favorable witnesses to support defense); <u>Gomez v. Beto</u>, 462 F.2d 596 (5th Cir. 1972)(when a defense counsel fails to investigate his client's only possible defense, although requested to do so by him and fails to subpoena witnesses in support of the defense, it can hardly be said that the defendant had the effective assistance of counsel); <u>Highsmith v. State</u>, 617 So.2d 825 (Fla. 1st DCA 1993) (failed to interview, investigate, call witnesses to support defense theory); <u>Sorgman v. State</u>, 549 So.2d 686 (Fla. 1st DCA 1989)(failed to call witnesses that may have been able to cast doubt on defendant's guilt and failed to depose prospective witnesses).

Trial counsel was fully cognizant of Joseph Clark as confidential informant and prospective State witness as well as a witness to

to support the affirmative defense of entrapment as a matter of law.
Trial counsel knew the whereabouts of CI Clark or had means to have
him appear for deposition and trial testimony.  Clark was available
to testify and that fact was acutely aware by trial counsel.  The
defendant has been prejudiced by trial counsel's failure to inter-
view, depose, and have Clark to appear and testify before the jury
as a defense witness prejudiced him in the eyes of the jury.  Had
Clark been interviewed, deposed, and appeared to testify as a defense
witness, the result of the trial could have been different absent the
counsel's failure to support the affirmative defense of entrapment
with this requested but omitted witness.

A fortiori, prejudice to the defendant is evident from record
on appeal (R 26-28, 29), when trial counsel adopted the "Amended
Motion to Dismiss Based Upon Entrapment" filed by co-defendant's
trial counsel and necessitated the filing of deposition(s) of the
State witness ["Agent provocateur for the State of Florida"] that
supported dismissal of the information based upon entrapment as a
matter of law.  Accord, Myers v. State, 494 So.2d 517, 518-519 (Fla.
4th DCA 1986).  Defendant had alleged that 1) the "Agent Provocateur
for the State of Florida" had induced him to engage in the alleged
criminal activity of conspiracy to traffic in cocaine and 2) that
he lacked the necessary predisposition to perform the criminal con-
duct.  See also, Matthews v. United States, 485 U.S. 58, 62-63, 108
S.Ct. 883, 886-887 (1988).  Defendant's affirmative defense mandated
that Clark testify in deposition or before the Court to remove any
doubt(s) that he [state agent] had originated criminal design, that
he implanted in the mind of an innocent person [defendant] the dis-
position to commit the offense, and that defendant(s) then committed

-3-

the alleged criminal act at the urging of the "agent provocateur"
Clark. Myers v. State, 494 So.2d at 518. Since the evidence avail-
able to the defendant(s) would have shown a lack of conflict, the
issue of entrapment was one for the trial court rather than submis-
sion to the jury. Cruz v. State, 465 So.2d 516, 520-522 (Fla. 1985)
[approving State v. Casper, 417 So.2d 263 (Fla. 1st DCA 1982)], cited
in Myers supra.

III

Defendant alleged that it was judicial error for the trial court
to admit into evidence, over objections, the taped conversation between
Clark, Agent Anderson, and co-defendant Fritz Maignan. The error in
admission was tantamount to violation of the Confrontation Clause, as
Clark was a non-testifying participant in the conversation. Such is
a violation of the Sixth Amendment to the Constitution. The purpose
of the tape's admission was to prove that a conversation had occurred
and placed defendant in Fritz Maignan in the role as a co-conspirator
without knowledge of the purpose and intent of the "structured" crime.
Cf, Carter v. Sowders, 5 F.3d 975, 978-980 (6th Cir. 1993)(Admitting
videotaped deposition of paid police informant violation petitioner's
Sixth Amendment rights...unavailable witness exception to hearsay rule
did not apply...and petitioner did not waive right to confrontation by
failing to attend deposition or by counsel's appearance at beginning
of deposition), cert. denied, __U.S.__, 118 S.Ct. 1867 (1994); Mitchell
v. Hoke, 930 F.2d 1, 2-3 (2nd Cir. 1991)(Admission of police hearsay
description of robbery defendant's lineup identification by victim vio-
lated defendant's confrontation clause rights); and Mason v. Scully,
16 F.3d 38, 43-44 (2nd Cir. 1994)(Confrontation Clause violated when
court admitted testimony of police detective about hearsay statement

-4-

of nontestifying codefendant where the implication sought by the prosecutor was that detective's conversation with codefendant had led police to focus investigation on defendant).

In the instant case, there was no hearing on the reliability or trustworthiness of the "conversation" of the agent provocateur Clark, Agent Anderson, and Codefendant Fritz Maignan prior to admission of this tape that had ulterior purposes to support the State's theory of conspiracy to traffic in cocaine.

Florida courts have held that the failure of appellate counsel to brief and argue an issue that was fundamental error may be raised in a postconviction motion. See Crumbley v. State, 661 So.2d 383, 384-385 (Fla. 1st DCA 1995). Since Edwards v. State, 583 So.2d 740 (Fla. 1st DCA 1990) held that officer's testimony that he recognized defendant as person shown in videotape making cocaine sale to informant was inadmissible where State failed to lay proper predicate by showing that officer had prior knowledge of or special familiarity with defendant that would enable him to identify him or that he was qualified as an expert in videotape identification constituted prejudicial error that had invaded province of jury, the admission of the tape was error of constitutional dimension cognizable in postconviction proceeding.

IV

Defendant alleged that trial counsel failed to present a substantial motion for judgment of acquittal and/or motion for new trial that properly preserved the issue of the weight and sufficiency of evidence deprived him of proper consideration by trial and appellate courts. Hornsby v. State, 680 So.2d 598 (Fla. 2d DCA 1996); Hardman v. State, 584 So.2d 649 (Fla. 2nd DCA 1991). State had argued on defendant's direct appeal that trial counsel was deficient in properly presenting

and preserving the record for appellate review by the "boilerplate" motion for judgment of acquittal and failure to raise the sufficiency of the evidence in conformance with the rules of court.  The State cannot argue a different posture before this Court and, thus, the defendant's claim is proper and appropriate for collateral relief.

V

Defendant asserted that the trial counsel failed to have the trial court to properly instruct the jury as provided by Vazquez v. State, 700 So.2d 5 (Fla. 4th DCA 1997).  State argued in its Answer that Vazquez had been raised in his direct appeal, when, in fact, was not cited by the defendant nor the State on direct appeal.  A fundamental error of constitutional dimension may be revisited on showing a "miscarriage of justice" by the improper jury instruction that incorrectly stated the law for the jury to make a correct and proper verdict.  Improper jury instruction is a fundamental error, when the factfinders are misled in reaching a verdict consistent with due process of law; therefore, the failure of trial counsel to protect the defendant's right to a properly instructed jury is prejudicial error and a denial of effective assistance of counsel that is congizalbe under collateral proceedings.  See Gray v. Lynn, 6 F.3d 265, 269-270 (5th Cir. 1993)(counsel's failure to object to erroneous jury instructions constituted ineffective assistance of counsel).  See also Gerds v. State, 64 So.2d 915 (Fla. 1953) and Ruffner v. State, 590 So.2d 1054 (Fla. 3d DCA 1991)[Erroneous jury instructions constituted a denial of due process and warrants a new trial for the defendant).

VI

Trial counsel was ineffective for failure to assert that as a

-6-

matter of law that the information should have been dismissed for the failure of the police to monitor the confidential informant and assure that he was not on a "fishing expedition" to create crime as opposed to undercovering criminal activities that would benefit him as a paid informant.

When trial counsel failed to require the State to provide all of the benefits accruing to the confidential informant upon written discovery motion(s) directed to this issue, this was below par for a reasonably competent attorney in light of Rickman v. Dutton, 864 F. Supp. 686 (M.D.Tenn. 1994), affirmed 131 F.3d 1159 (6th Cir. 1997), cert. denied, __U.S.__(1998); Groseclose v. Bell, 895 F.Supp. 935 (M.D.Tenn. 1996), affirmed 130 F.3d 1161 (6th Cir. 1997), cert. denied, __U.S.__(1998); Carriger v. Stewart, 132 F.3d 463 (9th Cir. 1997); and United States v. Burnside, 824 F.Supp. 1215 (N.D.Ill. 1993). Had all information been made available to defense team, it would have clearly shown that the defendant was lured into a trap by Clark and that the defendant and co-defendant were innocent victims of a sinister plot to ensnarl them into a criminal offense that would not have occurred but for the unsupervised activities of the confidential informant in the State of New York with a mission to lure unsuspecting defendant(s) to the State of Florida for the purpose of creating crimnal offense.

### VII

Although the defenant has completed service of sentence for the offense of carrying a coceled weapon, he, nonetheless, challenges the validity of the offense as being violative of due process of law.  It is a fundamental rule of law that a person must have knowledge of the presence of a weapon being in his or her presence and that he had the

to access the weapon and use it during the course of his alleged
possession.  Carrying a concealed weapon is a specific intent crime
and required knowledge be a predicate for conviction.  Here in this
case, the defendant was utilizing a vehicle that belong to someone
else and had no actual or constructive knowledge of the presence  of
the firearm that had no bullets within the chamber and that the clip
was also devoid of any bullets.  At no time did the defendant Katan
Maignan ever indicate to the police agents that he had possession of
a weapon on or about him.  Therefore, he was deprived of due process
of law when the trial counsel failed to properly set forth a basis for
a judgment of acquittal on this offense as well as failed to properly
seek a proper jury instruction.  In State v. Jasper, ___N.W.2d___, 49
CrL 4104, Neb. Sup.Ct. 1991), the court held that a jury insturction
drawn from statutory language, stating that the presence of a gun in
an automobile was "prima facie evidence" that it was in the possession
of the occupants shifted the burden of proof at the trial for possession
of an illegal weapon.  The jury might have interpreted the instruction,
according to the court, that an illegal firearm's presence in and of
itself established the defendant's commission of a firearm's crime...
or the jury might have inferred that the gun's presence by itself had
established the knowledge component of the offense.  The court further
held that either way, the instruction was tantamount to an impermis-
sible directed verdict in favor of the State, requiring reversal of
the conviction.

ACCORDINGLY, the Motion for Postconviction Relief should, fol-
lowing an evidentiary hearing, be GRANTED and the defendant(s) dis-
charged from custody in accordance of Rule 3.850, Fla.R.Cr.P., and or
such other and further relief as may be deemed proper and meet to ac-

-8-

cord justice for the defendant(s) in this cause of action.

Respectfully submitted,

_Katan Maignan_
Katan Maignan, DC# 196820
Glades Correctional Institution
500 Orange Avenue Circle
Belle Glade, FL 33430-5221

_Reply Preparer/GCI_

Defendant in Proper Person

### VERIFICATION OF REPLY

UNDER PAIN AND PENALTY OF PERJURY, I hereby verify that I am
the defendant and that the facts and matters set forth and alleged
are true and correct.

Dated:  May 11, 1999

_Katan Maignan_
Katan Maignan, Defendant

### CERTIFICATE OF SERVICE

I HEREBY CERTIFY that a true and correct copy of the foregoing
BELATED REPLY TO STATE'S ANSWER TO SHOW CAUSE ORDER has been mailed
this  11th  day of May, 1999, to OFFICE OF STATE ATTORNEY, Joel Silver-
shein, Assistant State Attorney, 201 S.E. 6th Street, Rm 675, Fort
Lauderdale, FL 33301 and FRITZ MAIGNAN, Co-Defendant, DC# 196119,
DeSoto Correctional Institution, P.O. Drawer 1072, Arcadia, FL 34265.

May 11, 1999

_Katan Maignan_
Katan Maignan, Defendant

IN THE CIRCUIT COURT OF THE 17TH JUDICIAL CIRCUIT
IN AND FOR BROWARD COUNTY, FLORIDA

STATE OF FLORIDA,              )
                               )
            Plaintiff,         )          CASE NO.:  95-14021CF10A
                               )
vs.                            )          JUDGE:  MARC H. GOLD
                               )
KATAN MAIGNAN,                 )
                               )
            Defendant.         )
_____)

## ORDER DENYING DEFENDANT'S
## <u>MOTION FOR POST CONVICTION RELIEF</u>

THIS CAUSE, having come before the Court upon Defendant's Motion For Post
Conviction Relief, pursuant to Florida Rule of Criminal Procedure 3.850, and the Court
having considered same, the State's Response thereto, the court file and otherwise
being fully advised in the premises, hereby finds as follows:

Defendant, KATAN MAIGNAN, and his brother, FRITZ MAIGNAN, were
arrested in Broward County, Florida on August 11, 1995. Both brothers were charged
by Information with Conspiracy to Traffic in Cocaine (between 400 grams and 150
kilograms). Katan was also charged with Carrying a Concealed Firearm. The events
leading up to the arrest began earlier in August, 1995, in New York,  when the
Defendants met a man who worked for the DEA as a paid informant. The Defendants
were put in touch with a DEA agent and several telephone conversations resulted in
both Defendants coming to Fort Lauderdale, Florida to purchase two kilograms of
cocaine for $33,000.00.

Katan Maignan was arrested in Hallandale, Florida after a meeting with the DEA agent. His car was stopped and a search revealed $1750.00 in cash and a handgun on the floor of the car. Fritz Maignan was arrested several hours later when he returned to the area to look for his brother. No money or cocaine ever changed hands. At the trial of this cause the Defendants testified that they were lured into this crime by the action of the law enforcement officers and that they were not predisposed to be involved in dealing drugs. The entrapment defense failed and both Defendants were found guilty as charged by a jury. The Honorable Robert W. Tyson, Jr. sentenced the Defendants to 15 years in prison with a 15 year mandatory minimum on June 14, 1996. The Defendants both filed appeals in the Fourth District Court of Appeal. On October 1, 1997 both cases were Per Curiam Affirmed and a Mandate was issued on December 5, 1997.

The Defendant in this Motion for Post Conviction Relief alleges that his trial counsel provided ineffective assistance by failing to call the confidential informant as a witness, by insufficiently arguing the Motions for Judgment of Acquittal, by not objecting to the jury instruction on entrapment, by not having moved to dismiss the trafficking charge based on the confidential informants lack of supervision and that the Court erred in admitting recorded telephone conversations into evidence. This Court has thoroughly reviewed the allegations of the Defendant and the law applicable to each issue. The Court finds that the Defendant's claims are without merit and adopts the State's Response along with the attached portions of the record which conclusively refute the Defendant's entitlement to relief. The various allegations of ineffective assistance of counsel do not rise to level required by Strickland v. Washington, 466 U.S. 668, 104 S. Ct. 2052, 80 L. Ed 674 (1984) and Downs v. State, 453 So.2d 1102

(Fla. 1984). The allegation of error on the part of the court improperly allowing the admission of evidence is not cognizable in a post conviction setting and could have been addressed on direct appeal.

Accordingly, it is hereby,

**ORDERED AND ADJUDGED** that Defendant's Motion for Post Conviction Relief is respectfully, **DENIED**.

The Defendant has thirty (30) days from the date of this Order to file an appeal.

**DONE AND ORDERED** in Chambers, Fort Lauderdale, Florida, this 19th day of May, 1999.

_____
MARC H. GOLD
CIRCUIT COURT JUDGE

Copies furnished:

Mr. Katan Maignan, Defendant, DC#196120
Glades Correctional Institution
500 Orange Avenue Circle
Belle Glade, Florida 33430

Assistant State Attorney Joel Silvershein
Broward County Courthouse

IN THE CIRCUIT COURT OF THE SEVENTEENTH JUDICIAL
CIRCUIT IN AND FOR BROWARD COUNTY, FLORIDA
CRIMINAL DIVISION

STATE OF FLORIDA

vs.                                        CASE NO. 95-14021 CF10A

KATAN MAIGNAN,

            Defendant.
_____/


## MOTION FOR REHEARING

Defendant, KATAN MAIGNAN, moves the Court to grant rehearing
of the Court's ORDER DENYING DEFENDANT'S MOTION FOR POSTCONVICTION
RELIEF dated MaY 19, 1999, and received by defendant on May 25, 1999,
and as grounds would show unto the Court:

I

The Court failed to address the Defendant's Belated Reply to
State's Answer to Show Cause Order that was submitted to the Court
on May 11, 1999, and, therefore, incorporates same within rehearing
motion for the Court to consider on the merits along with additional
factual and legal issues brought to the attention of the Court.

II

The Court has misapprehended or misconstrued the factual and
legal issue of lack of mens rea in each of the offenses charged in
the information.  The trial court was duty bound to follow dictates
of Myers v. State, 494 So.2d 517 (Fla. 4th DCA 1986) and committed
judicial error of constitutional dimension when it failed to dismiss
prosecution as a matter of law, having shown that he was entrapped as

. Defendant would further cite unto the Court <u>United</u>

ə, 971 F.2d 317 (9th Cir. 1992), at 320, wherein the


ᵉ the Government has induced an individual to
the law and the defense of entrapment is at
, ... the prosecution must prove beyond reason-
ɨoubt that the defendant was disposed to commit
riminal act prior to first being approached by
ɨment agents." <u>Johnson v. United States</u>, ___ U.S.
__,112 S.Ct. 1535, 1540, 118 L.Ed.2d 147 (1992).
ᵃctors are relevant in determining predisposition:
ɨe character of the defendant, (2) who first sug-
ɨ the criminal activity, (3) whether the defendant
ɨd in the activity for profit, (4) whether the
ɨant demonstrated reluctance, and (5) the nature
ᵉ government's inducement. <u>United States v.Citro</u>,
.2d 1149, 1152 (9th Cir. 1988). In reviewing
ɨfactors, we "view the evidence in the light most
ɨble to the government." Id., at 1151. Of these
ᵃctors, the most important is whether the defen-
ɨemonstrated reluctance which was overcome by the
ɨment's inducement. Id. at 1152.

ɨive factors <u>nunc pro tunc</u> to the Motion to Dimiss

ɨon to Dismiss, it is clear that as a matter of law

ɨ by the "agent provocateur" for police official(s)

create crime rather than to expose crime – within

jurisdiction of Broward County, Florida. Hounding

and co-defendant in the State of New York to come

Florida to conduct a drug deal costing thousands of

either of them had sufficient funds to do so, was a

unsuspecting "fish" that would be trolled right to

they refused to "bite the bait" thrown at them by

ials in Broward and Palm Beach Counties.

          III

has overlooked <u>Walker v. State</u>, ___So.2d___(Fla. 2nd

Fla.L.Weekly D1081), wherein the District Court of

ɨ defendant's assertion in his postconviction motion

          -2-


ɨuch a theory

ᵉprived of

the Court to

l issues that

y fair trial

ɨe <u>Strickland</u>

l claims on

<u>toto</u> lest a

.


bits constituted

bility to make

dependent of

ɨn comdemned

cited to the

e. This Court

f the record


TED, and the

WER TO SHOW

rehearing con-

identiary

t the Motion

.t.

DC#198120
nue Circle
L 33430-5221

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that a true and correct copy of the foregoing MOTION FOR REHEARING has been mailed this 26th day of May, 1999, to OFFICE OF STATE ATTORNEY: JOEL SILVERSHEIN, Assistant State Attorney, 201 Southeast 6th Street, Rm 675, Ft. Lauderdale, FL 33301 and to FRITZ MAIGNAN, Co-Defendant, DC#196119, DeSoto Correctional Institution, P.O. Drawer 1072, Arcadia, FL 34265.

Katan Maignan, Defendant

## VERIFICATION OF REHEARING MOTION

UNDER PAIN AND PENALTY OF PERJURY, I hereby verify that I am the defendant and that the facts and matters set forth and alleged are true and correct.

WITNESS my hand and seal this 26th day of May, 1999, at Belle Glade, Florida.

Katan Maignan, Defendant

KM:ccc

Document Preparer

-5-

IN THE CIRCUIT COURT OF THE 17TH
JUDICIAL CIRCUIT, IN AND FOR
BROWARD COUNTY, FLORIDA

STATE OF FLORIDA,                          CASE NO. 95-14021-CF-10A

      Plaintiff,                          JUDGE: MARC H. GOLD

v.

KATAN MAIGNAN,

      Defendant.

_____/

## ORDER

**THIS CAUSE** came to be heard on the Defendant's Motion for Rehearing, dated May 26,

1999, and the Court having considered same, and having reviewed the Court file herein, and

being otherwise duly advised in the premises, it is thereupon


**ORDERED AND ADJUDGED** that the Defendant's Motion for Rehearing is respectfully

**DENIED.**


**DONE AND ORDERED** in Chambers at Fort Lauderdale, Broward County, Florida,

this _12th_ day of ~~September,~~ October, 1999.

                             **MARC H. GOLD**
                             **A TRUE COPY**

                             _____

Copies furnished:                          MARC H. GOLD
                                      CIRCUIT COURT JUDGE

Mr. Katan Maignan, DC# 196120
Glades Correctional Institution
500 Orange Avenue Circle, B-3 Building
Belle Glade, FL 33430-5221

State Attorney's Office, Broward County, FL



Fourth District Court of Appeal
P.O. Box 3315
West Palm Beach, Florida 33402
(561) 697-7200

## ACKNOWLEDGMENT OF NEW CASE

DATE:        January 31, 2000

STYLE:       KATAN MAIGNAN              v.   STATE OF FLORIDA


4DCA#:     **4D00-264**

The Fourth District Court of Appeal has received the Notice of Appeal reflecting
a filing date of 10/25/99

The county of origin is Broward.

The lower tribunal case number provided is 95-14021 CF10

The filing fee is No Fee-3.850.

Case Type: 3.850 - Summary

The Fourth District Court of Appeal's case number must be utilized on all pleadings and correspondence
filed in this cause.  Moreover, ALL PLEADINGS SIGNED BY AN ATTORNEY MUST INCLUDE THE
ATTORNEY'S FLORIDA BAR NUMBER.

Please review and comply with any handouts enclosed with this acknowledgement.


cc: State Attorney- Brow.      Katan  Maignan              Attorney General-W.P.B.
    Public Defender-P.B.